UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTIS DAY PRIMES, | No. 2:18-cv-02059 MCE AC P |
| Petitioner, | |
| v. | ORDER and |
| JOE LIZARRAGA, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. See ECF No. 1. By order filed August 2, 2018, this court directed petitioner to show cause why this case should not be dismissed due to untimeliness and/or failure to exhaust state court remedies, and directed respondent to file a reply. See ECF No. 4. The parties have responded. See ECF Nos. 8, 12, 13-4. In addition, petitioner requests appointment of counsel. ECF Nos. 15-7.

This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons set forth below, petitioner's requests for appointment of counsel are denied, and the undersigned recommends that this action be dismissed as untimely.

////

1

II. Background

The instant petition appears to be petitioner's first application for federal habeas relief. See ECF No. 4 at 2. The petition, filed July 18, 2018,[1] challenges petitioner's 2002 convictions for sexual crimes involving a minor, and petitioner's resulting 73-year sentence. The petition alleges four grounds for relief: ineffective assistance of trial and appellate counsel, prosecutorial misconduct, failure of the state to provide petitioner with expert psychiatric evaluation and testimony, and actual innocence. Petitioner states that he has been filing writs of habeas corpus in the state courts for the last ten years, without success, and that any problem with the timeliness of the instant petition is due to petitioner's memory lapses due to having "a bullet in [his] brain." ECF No. 1 at 11, 13.

III. Legal Standards for Reviewing Petition

Under Rule 4 of the Rules Governing Section 2254 Cases, this court is required to conduct a preliminary review of all petitions, and "to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Habeas Rule 4, Advisory Committee Notes (1976 Adoption) (citation omitted). District courts may "consider, sua sponte, the timeliness of a state prisoner's habeas petition." Day v. McDonough, 547 U.S. 198, 209 (2006). However, "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." Id. at 210. "Thus, while the district court has the authority to raise the statute of limitations sua sponte and to dismiss the petition on those grounds, that authority should only be exercised after the court provides the petitioner with adequate notice and an opportunity to respond." Herbst v. Cook, 260 F.3d 1039, 1043 (9th Cir. 2001) (citation omitted).

////

////

---

[1] Unless otherwise noted, the court has applied the prison mailbox rule in identifying petitioner's filing dates. Under that rule, a document is deemed served or filed on the date it was signed by the prisoner and given to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

IV. The Parties' Positions

In response to this court's order to show cause, petitioner contends that any untimeliness or non-exhaustion, defects which he does not directly dispute, are attributable to his disabilities resulting from a bullet that has remained in his brain since 1985, causing two comas, blindness in one eye, migraine headaches and memory loss. See ECF No. 8. Petitioner states, "[t]he main and most important reason why is because I'm ADA," ECF No. 8 at 1, that is, an individual with a disability recognized under the Americans with Disabilities Act, 42 U.S.C.A. §§ 12131-34.

Respondent contends that the instant petition is untimely and that petitioner's alleged disabilities do not entitle him to equitable tolling. ECF No. 14. Respondent also contends, alternatively, that petitioner's federal claims were not exhausted in the state courts.

V. Statute of Limitations

A. Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute provides four alternate trigger dates for commencement of the limitations period. Id., § 2244(d)(1)(A)-(D).

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). See Carey v. Saffold, 536 U.S. 214, 216-17 (2002). A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). "An untimely petition, however, is not 'properly filed' pursuant to 28 U.S.C. § 2244(d)(2), and so it does not toll the statute of limitation." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010) (citing Pace v. DiGuglielmo, 544 U.S. 408, 410 (2005)); Thorson v. Palmer, 479 F.3d 643, 645 (9th Cir. 2007)).

Additionally, there is no statutory tolling for the period between a final state court decision and the filing of a federal petition. Duncan v. Walker, 533 U.S. 167 (2001). State habeas petitions filed after expiration of the limitations period do not revive the statute of

limitations and have no tolling effect. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000) (petitioner is not entitled to tolling where the limitations period has already run).

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted). Petitioner bears the burden of proving application of equitable tolling. Banjo, 614 F.3d at 967 (citations omitted).

      B.    Analysis

          1.    The One-Year Limitations Period

On June 28, 2002, petitioner was convicted of multiple sex offenses against a minor, and several sentencing enhancement allegations were found true. See Lodg. Doc. 1 (Abstract of Judgment, Sacramento County Superior Court, Case No. 01F05339). On August 16, 2002, petitioner was sentenced to an indeterminate state prison term of seventy-three years to life. Id. On March 25, 2004, the California Court of Appeal modified one offense, reduced the sentence imposed on that offense, and affirmed the judgment as modified. See Lodg. Doc. 2 (Mar. 25, 2004 Opinion, Cal. Court of Appeal, Third Appellate District, Case No. C041977).

Petitioner did not seek direct review in the California Supreme Court.[2] Therefore, direct review became final on May 4, 2004, upon expiration of the forty-day period for seeking such review. See Cal. Rules of Court, Rules 8.366 and 8.500.

AEDPA's one-year limitations period commenced the next day, on May 5, 2004. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (commencement of limitations period excludes last day of period for seeking direct review, by application of Fed. R. Civ. P. 6(a)). Therefore, absent statutory or equitable tolling, the federal limitations period expired one year

---

[2] It appears that petitioner attempted to seek untimely review in 2006, but his petition was returned by the California Supreme Court for lack of jurisdiction. See ECF No. 14-3 at 54.

later, on May 4, 2005.  Petitioner's federal habeas petition was filed more than thirteen years later, on July 18, 2018.

2.      Statutory Tolling Does Not Apply

There are no grounds for statutory tolling because both of petitioner's state habeas petitions were untimely filed.  Petitioner filed his first state petition in the California Supreme Court on August 30, 2006, and it was denied as untimely on March 14, 2007.[3]  See Lodg. Docs. 3-4 (Cal. Supreme Court Case No. S146262).  Petitioner filed his second state habeas petition in the Sacramento County Superior Court on December 13, 2007, and it was denied as untimely on January 15, 2008, with citations to *In re Robbins* (1998) 18 Cal. 4th 770, and *In re Clark* (1993) 5 Cal. 4th 750 (1993), among other authorities.[4]  See Lodg. Docs. 5-6 (Sacramento County Superior Court Case No. 07F11772).  On August 30, 2006, when petitioner filed his first state petition, the federal limitations period had been expired for over a year, since May 4, 2005.  Neither petitioner nor respondent assert that petitioner filed any other state court pleading prior to August 30, 2006 that might have statutorily tolled the limitations period.  Thus, when petitioner filed his second state habeas petition on March 14, 2007, the limitations period had expired more than two years before.

There are two independent reasons that petitioner's state court filings can have had no tolling effect.  First, the filing of a state application for collateral relief cannot revive a limitations period that has already expired.  Ferguson, 321 F.3d at 823.  Second, a state petition that is untimely is not "properly filed" and has no tolling effect.  Pace, 544 U.S. at 410.  "A California court's determination that a filing was untimely . . . is dispositive."  Banjo, 614 F.3d at 968 (citing Carey, 536 U.S. at 225-26).  "Under Pace, if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled."  Bonner v.

---

[3] The California Supreme Court ruled as follows, ECF No. 14-4 at 2:
> Petition for writ of habeas corpus is DENIED.  (See *In re Dixon* (1953) 41 Cal. 2d 756; *In re Lindley* (1947) 29 Cal. 2d 709; *In re Swain* (1949) 34 Cal. 2d 300, 304; *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

[4] The Sacramento County Superior Court issued a written order finding no exception to the bar of untimeliness.  See ECF No. 14-6 at 2-4.

Carey, 425 F.3d 1145, 1149 (9th Cir. 2005), amended on denial of rehearing, 439 F.3d 993 (9th Cir. 2006). Because the state courts denied petitioner's applications as untimely, those petitions were not properly filed and do not support tolling.

### 3. Equitable Tolling Does Not Apply

The next question is whether petitioner is entitled to equitable tolling. In response to the court's order to show cause, petitioner explained in pertinent part, ECF No. 8 at 1-2:

> [The court has asked me] why I took so long to appeal my case in the federal courts. The main and most important reason why is because I'm ADA and I'm living under the ADA law and rules at this time today. In 1985 when I was then free I got shot in my for[e]head right between my eyes with a hand gun pistol and this bullet is still in my brain today. When I got shot in my for[e]head this bullet then made my left eye go completely blind and I went into a coma for 46 days. The doctors at UC Davis Medical Center in Sacramento, Calif. then cut my head open across the top to remove this bullet but when they seen how far the bullet is in my brain they did not want to risk messing me up mentally so they then left this bullet in my brain and so[w]ed my head back closed up. In 1990 this bullet moved in my brain and caused an aneurism to develop and I went into a coma for 22 days. While in this coma at UC Davis Medical Center the doctors cut my head open again across the top and went into my brain to then drain the blood out of the blood vessel so that it will not bust and I then die. When I woke out of this coma my complete memory and comprehension was then gone and I was placed in Atas[ca]dero State Hospital . . . for about 28 months then my memory came back and I was then sent back to court and stood trial.
>
> [¶] This bullet is still in my brain today, it still severely effects my short term memory, and it causes me to get extreme migraine headaches occasionally. I think I'm okay mentally but several times during each day I have to be told what day it is as I don't be remembering the day. All this is noted in my medical file and for this reason I hope I can be excused for filing my appeal late. . . .

Thereafter petitioner filed a second response that paraphrases equitable tolling requirements by asserting that petitioner is "entitled to extraordinary circumstances as he is a mental patient who suffers from short term memory loss due to bullet lodged in brain." ECF No. 12 at 1.

Respondent contends petitioner has failed to meet his burden of demonstrating that extraordinary circumstances prevented his timely filing or that he has been pursuing his rights diligently, and thus argues petitioner has failed to demonstrate entitlement to equitable tolling. Holland, 560 U.S. at 649. See ECF No. 13. Respondent argues that petitioner's most serious symptoms resulting from his bullet injury subsided before petitioner committed the offenses for

which he is currently incarcerated, and that his residual symptoms are too insignificant to excuse his untimeliness in pursuing the claims in this case. Respondent also contends that petitioner has failed to demonstrate due diligence in pursuing his habeas claims.

"A petitioner seeking equitable tolling on the grounds of mental incompetence must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing." Orthel v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) (citing Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010)). "[T]he petitioner must [also] show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.'" Orthel, 795 F.3d at 938-39 (quoting Bills, 628 F.3d at 1100). "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (cited with approval in Orthel, 795 F.3d at 939-40).

Respondent has submitted a copy of an August 16, 2002 Probation Officer's Report that sets forth recommendations for sentencing petitioner in Sacramento County Superior Court Case No. 01F05339. See ECF No. 14-7. The Report notes that petitioner, who was born in 1965, suffered his 1985 bullet injury at 19 years of age. Id. at 14-5. Five years later, in 1990, while incarcerated on a drug possession charge, petitioner "suffered a series of seizures, a symptom of the injury" and "total amnesia" and was "transferred to Atascadero State Hospital for a period of 19 months." Id. at 15. "It was the opinion of Atascadero State Hospital that subarachnoid hemorrhage (aneurysm) was the cause of his memory problems. They noted his short term memory was intact but his distant memory was poor. Though he remained confused about the events of the intra-cranial bleeding and surgery at the U.S. Davis Medical Center, he was found to be competent to stand trial and was released with no psychotropic medications." Id. at 17. Petitioner completed his state prison terms and was discharged on July 22, 1993. Id. at 15, 18.

The Report continues: "In 2000, [petitioner] struck a car while riding his bicycle and his head cracked the windshield. He began suffering severe headaches shortly thereafter. A CAT-scan revealed the bullet had split in two as a result of the impact. *He has not suffered any symptoms since that time*." Id. at 15-6 (emphasis added).

Thus, according to this Probation Report, in August 2002, when petitioner was convicted and sentenced based on the matters challenged by the instant federal habeas petition, his mental competence was not at issue. Petitioner had no significant physical or psychological symptoms related to his 1985 injury and was taking no psychotropic medications.

Petitioner's convictions and sentence became final on May 4, 2004. Although petitioner waited until 2006 to file the first of his two untimely state habeas petitions, he has submitted no evidence to suggest that this untimeliness was due to any physical or mental limitations. Rather, as set forth in his August 30, 2006 declaration filed in support of his first state habeas petition, which petitioner then acknowledged was untimely, he explained: "I didn't know about filing a petition for review [sic], I thought my lawyer had done all that. *I just found out that he didn't do it*, now I ask to be relieved from default." ECF No. 14-3 at 58 (emphasis added). Petitioner's only reference to his limitations was: "I am mentally and physically disabled from a gun shot wound to my forehead, my left eye is totally blind and my memory is often confused." Id. Petitioner indicated that he turned to another inmate for assistance: "I'm unable to understand my criminal case as to filing documents on time. I have asked inmate [name] housed in my cell block (building) to help me file my Petition for Review [sic]." Id. These statements demonstrate that as soon as petitioner realized his attorney was no longer representing him, he began pursuing his claims on his own, and actively sought the assistance of another inmate to do so. Although these efforts were untimely, they support a reasonable inference that *had* petitioner known earlier that he was no longer represented, he would have – and could have – timely submitted his first state habeas petition.

This inference is further supported by petitioner's pursuit of his second (also untimely) habeas petition. Within nine months after the denial of his first state habeas petition, petitioner filed his second petition, again noting but not relying on the residual symptoms from his 1985

injury, and demonstrating resourcefulness in obtaining the assistance of another inmate. In his declaration filed in support of his 2007 state habeas petition, petitioner noted in part, ECF No. 14-5 at 3:

> Petitioner previously submitted a writ of habeas corpus to the court. The writ was done "by himself." As petitioner has virtually no legal background and due to having short and long term memory losses due to a gun shot wound to the head petitioner has been going into the law library getting some assistance from an inmate helping him do his best to research and understand criminal law as it applies in his case. . . . Petitioner . . . asks the court to excuse any defect in form, content, or submission this petition may contain or have associated with it.

The inference that petitioner understood the need to timely file his state petitions and was capable both mentally and physically to do so, is also supported by petitioner's statements before this court. Petitioner avers that he is blind in one eye, has "severe" short term memory lapses, and has "occasional" "extreme migraine headaches," but considers himself "okay mentally." ECF No. 8 at 2. Petitioner has submitted no medical or mental health records, no evidence of his ADA limitations or CDCR classification assessments, nor any other documents or declarations from which to infer that petitioner's limitations are – or were, at any time since 2002 – greater than he himself has described. Moreover, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006).

For these reasons, the court finds that petitioner has not demonstrated that he "was unable rationally or factually to personally understand the need to timely file" *or* that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." Bills, 628 F.3d at 1100; see also id. at n.2 ("Under our formulation, a petitioner would be entitled to equitable tolling if he could show either of those conditions were met: either he did not understand his need to timely file or his mental impairment made him unable to take steps to effectuate that filing."). Petitioner has failed to "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (cited with approval in Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003), as amended (Nov. 3, 2003)). Therefore, the court

finds that petitioner's mental and/or physical limitations were not sufficiently severe to qualify as "'extraordinary circumstance[s]' beyond his control" during the period relevant for timely exhausting and commencing the instant action. Bills at 1099-1100 (citing Holland, 560 U.S. at 649).

Nor has petitioner met the second prong for equitable tolling. "Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance. . . . The 'totality of the circumstances' inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay." Bills, 628 F.3d at 1100 (citing Holland, 560 U.S. at 649). Here, petitioner was diligent in pursuing his claims once he realized he was no longer represented. Moreover, he has been diligent before this court, by timely responding to the court's order to show cause. However, there is no evidence to support a finding that petitioner was diligent in ascertaining the status of his legal representation or otherwise pursuing his legal claims within the period critical to AEDPA's statute of limitations. "A petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." Bryant v. Arizona Atty. Gen., 499 F.3d 1056, 1061 (9th Cir. 2007) (citing Roy v. Lampert, 465 F.3d 964, 973 (9th Cir. 2006)).

The undersigned finds the record sufficiently developed to render an evidentiary hearing unnecessary. Roberts, 627 F.3d at 773; Orthel, 795 F.3d at 939-40. On the present record and for the foregoing reasons, the court finds that petitioner is not entitled to equitable tolling.

### C. Recommendation

Because petitioner is entitled to neither statutory nor equitable tolling, the undersigned finds that petitioner's federal petition, filed more than thirteen years after expiration of AEDPA's limitations period, was untimely and should be dismissed on that basis.[5]

---

[5] Because dismissal is warranted on this ground, the court need not reach respondent's alternate argument that the claims asserted in petitioner's federal petition were not exhausted in the state courts.

### VI. Motions to Appoint Counsel

After responding to the court's order to show cause, petitioner filed three requests for appointment of counsel. See ECF Nos. 15, 16, 17. The first and second requests recount petitioner's 1985 bullet injury and resulting symptoms, but to no greater extent than previously addressed.[6] The third request does not reference petitioner's injury or related limitations, but asserts, inter alia, that petitioner is indigent, unlearned in the law, with limited access to the prison law library. See ECF No. 17. These matters, which are common to most prisoners, do not warrant appointment of counsel. See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).

There is no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Nevertheless, under 18 U.S.C. § 3006A, federal courts are authorized to appoint counsel at any stage of a habeas proceeding "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Due to these findings and recommendations finding the instant petition untimely filed, appointment of counsel would be futile at this juncture and would not serve the interests of justice. Therefore, petitioner's requests for appointment of counsel will be denied.

### VII. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that petitioner's requests for appointment of counsel, ECF Nos. 15, 16 & 17, are denied.

Additionally, IT IS HEREBY RECOMMENDED that this habeas corpus action, filed pursuant to 28 U.S.C. § 2254, be dismissed as untimely.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections

---

[6] In his first request for appointment of counsel, petitioner states in pertinent part: "I have a bullet lodged in my brain – which caused 2 comas of 40 days – leaving me with impaired short-term memory." ECF No. 15 at 1. In his second request, petitioner explains in pertinent part: "I can think, speak, and write, but I do suffer severe short-term memory loss due to a bullet lodged in my brain. I believe my disability is a major cause of why, I, an innocent person, 'fell through the cracks.'" ECF No. 16 at 1.

11

to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

If petitioner files objections, he may also address whether a certificate of appealability should issue and, if so, why and as to which issues. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

DATED: June 11, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE